JOSEPH BRAVERMAN, Plaintiff-Appellant, v. KUCHARIK BICYCLE CLOTHING COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—95—2647

Opinion filed March 20, 1997.

Michael W. Rathsack, of Chicago (Louis S. Goldstein, Cindy G. Fluxgold, and Michael W. Rathsack, of counsel), for appellant.

French, Kezelis & Kominiarek, P.C., of Chicago (Algimantas Kezelis and John A. Culver, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Joseph Braverman, was thrown from his bicycle during a cycling race and suffered injuries to his head. Plaintiff brought this action against defendant, Kucharik Bicycle Clothing Company (Kucharik), alleging that he was wearing a Kucharik leather safety helmet at the time of the accident. Plaintiff alleged that the helmet was defectively designed in that it did not provide adequate protection when being worn in an ordinary and usual manner. During discovery, defendant became aware that plaintiff could not locate the helmet involved in the accident. Defendant moved for summary judgment on the ground that the helmet was lost. The trial court granted defendant's motion. Plaintiff now appeals.

■ Our review of an order granting summary judgment motion is *de novo. Murphy v. General Motors Corp.*, 285 Ill. App. 3d 278, 279, 672 N.E.2d 371, 372 (1996). Summary judgment is proper only when the pleadings, together with any depositions, admissions, or affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992); *Murphy*, 285 Ill. App. 3d at 279, 672 N.E.2d at 372. A summary judgment motion asks whether the nonmovant has presented any evidence to raise a genuine issue of material fact. *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444, 449 (1984). All reasonable inferences drawn from the facts must be construed in the light most favorable to the nonmoving party. *Murphy*, 285 Ill. App. 3d at 279, 672 N.E.2d at 372. Although a plaintiff need not prove his case at the summary judgment stage, he must present enough evidence in support of each element of his cause of action to create a genuine issue of material fact. *H&H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill. App. 3d 235, 248, 632 N.E.2d 697, 705 (1994); *Mateika v. La Salle Thermogas Co.*, 94 Ill. App. 3d 506, 508, 418 N.E.2d 503, 505 (1981).

The pleadings, admissions, affidavits, and depositions on file here reveal the following pertinent facts. Plaintiff described the helmet he wore at the time of the accident as a "Kucharik Super Leather Hairnet Type Helmet." He claimed that he purchased the helmet by mail order from Itala Velo Sport in Florida. He was wearing the helmet when he was thrown from his bicycle during a race in Wisconsin. In

response to interrogatories, plaintiff stated that it was "unknown at this time who has the helmet." Plaintiff also stated that there had never been any "alteration, modification, repair, maintenance and/or service performed to or upon the product in question."

Plaintiff identified Alex Tudor as an expert. Tudor is an engineer who previously worked for Schwinn Bicycle Company and currently works for Triodyne, Inc. Tudor opined that the Kucharik Super Helmet was defectively designed, unreasonably dangerous, and not fit for its intended use. The leather polyester-filled helmet failed to provide any protection around and above the ear area. Tudor stated that the helmet failed to comply with the criteria for protective headgear for bicycle users set by the American National Standards Institute (ANSI) and the Snell Memorial Foundation. Tudor never tested or inspected the actual helmet worn by plaintiff. In forming his opinions, Tudor examined the helmet's specifications, the literature accompanying the helmet, and an exemplar Kucharik Super Helmet that plaintiff's attorneys acquired by advertising in a bicycle magazine. He also reviewed plaintiff's deposition as well as the deposition of plaintiff's doctor. Tudor observed that defendant's literature essentially argued that its leather hairnet helmet was superior to a hard shell plastic helmet. Tudor found this "180 degrees in opposition to all of the head protective literature." Tudor also noted that Kucharik's literature demonstrated the company's awareness of an existing alternative design.

Dr. George Bartl was plaintiff's treating physician. Bartl testified in his deposition that plaintiff suffered lacerations and abrasions above the hair line as a result of the accident. Plaintiff also had a linear fracture of the temporal area, a left basilar skull fracture, and a left temporal lobe contusion.

Dr. Jeffrey Feldstein was retained by plaintiff as a medical expert witness. In his affidavit, Feldstein explained that plaintiff's head injuries were located in areas covered by the Kucharik helmet. He opined that the injuries were of the type that would be expected from someone not wearing a helmet. The trial court struck an additional opinion of Feldstein's that a hard shell plastic helmet might have prevented plaintiff's injuries. The court found this last opinion was outside the doctor's expertise.

In its motion for summary judgment, defendant argued that, "without the actual helmet involved in plaintiff's accident, he can never prove his case." Defendant pointed out that, after repeated requests to produce the helmet, plaintiff failed to do so. Defendant stressed that plaintiff's expert never saw, inspected, photographed, or tested the helmet plaintiff was wearing. Plaintiff responded that the

absence of the helmet is not fatal to his cause of action. Plaintiff argued that, even though he was not in possession of the actual helmet he wore, he had set forth a *prima facie* case that the product's defective design served as a proximate cause of his injuries.

Following a hearing, the trial court granted summary judgment in defendant's favor. The court did not strike the testimony of plaintiff's expert or treating physician. The court struck only Dr. Feldstein's opinion that a plastic shell helmet may have prevented plaintiff's injuries. The court noted that plaintiff would be able to show the condition of the product when it left the manufacturer by use of Kucharik's literature and the exemplar helmet. The court reasoned, however, that the absence of the actual helmet involved in the accident would prejudice Kucharik in trying to defend the case. For example, the court observed, defendant could not show whether the helmet was altered or modified after its purchase. The court entered judgment in favor of Kucharik, therefore, "[b]ased upon *** the fact that the evidence was lost."

■ To prevail at summary judgment in a product liability case, the plaintiff must present evidence that the injury or damage resulted from a condition of the product, that the condition of the product was unreasonably dangerous, and that the condition existed at the time the product left the manufacturer's control. *H&H Sand & Gravel Haulers*, 260 Ill. App. 3d at 248, 632 N.E.2d at 706; *Samansky v. Rush-Presbyterian-St. Luke's Medical Center*, 208 Ill. App. 3d 377, 389, 567 N.E.2d 386, 395 (1990). These elements may be proved inferentially, by either direct or circumstantial evidence. *H&H Sand & Gravel Haulers*, 260 Ill. App. 3d at 248, 632 N.E.2d at 706; *Mateika*, 94 Ill. App. 3d at 508, 418 N.E.2d at 505. "Proper circumstantial evidence would include either proof that tends to exclude other extrinsic causes or expert testimony that the product was defective." *H&H Sand & Gravel Haulers*, 260 Ill. App. 3d at 248-49, 632 N.E.2d at 706; see also *Mateika*, 94 Ill. App. 3d at 508, 418 N.E.2d at 505.

■ It is clear that preservation of the allegedly defective product, if possible, is of the utmost importance in both proving and defending against a strict liability action. *Graves v. Daley*, 172 Ill. App. 3d 35, 38, 526 N.E.2d 679, 681 (1988); *Ralston*, 129 Ill. App. 3d at 1057, 473 N.E.2d at 449. However, the absence of the product is not fatal to a plaintiff's cause of action. *Murphy*, 285 Ill. App. 3d at 282, 672 N.E.2d at 374; *Samansky*, 208 Ill. App. 3d at 389, 567 N.E.2d at 395; see also *H&H Sand & Gravel Haulers*, 260 Ill. App. 3d at 248-49, 632 N.E.2d at 705-06; *Neighbors ex rel. American States Insurance Co. v. City of Sullivan*, 31 Ill. App. 3d 657, 659, 334 N.E.2d 409, 411 (1975). "It is possible to introduce sufficient evidence to establish a *prima facie*

case of strict liability even in the absence of the allegedly defective product." *Mateika*, 94 Ill. App. 3d at 510, 418 N.E.2d at 506.

Throughout this litigation, defendant's position has been that plaintiff has absolutely no chance of defeating its motion for summary judgment without the actual helmet involved in the accident. In light of the above principles, we hold that no such *per se* rule exists. We also find support for this conclusion in a recent decision by the Illinois Supreme Court.

In *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 201, 652 N.E.2d 267, 273 (1995) (Heiple, J., dissenting, joined by Harrison, J.), the plaintiffs brought a strict liability action against Coleman Company alleging that the company manufactured a defective heater that caused an explosion and injured plaintiffs. The plaintiffs also brought an action against Travelers Insurance Company, alleging that, following the accident, an adjuster from Travelers took possession of the heater and subsequently lost it. A majority of the supreme court held that the plaintiffs had stated a cause of action against Travelers for negligent spoliation of evidence. The majority also went on to suggest that the claims against Coleman and Travelers should be tried simultaneously. The majority explained that "[t]he dominant question is one of fact, whether the loss of the heater caused plaintiffs to be unable to prove their products liability claim against Coleman, and it is common to all the parties." *Boyd*, 166 Ill. 2d at 199, 652 N.E.2d at 273. The majority rejected the dissent's contention that the court should presume that the " 'loss of the heater deprived the plaintiffs of their lawsuit' against Coleman." *Boyd*, 166 Ill. 2d at 200, 652 N.E.2d at 273. The majority explained:

> "An evidentiary presumption is improper here for two reasons. First, if plaintiffs can prove their underlying lawsuit against Coleman without the missing heater, then they have not been injured by Travelers' loss of it. This is entirely possible in the present case because *plaintiffs may be able to prove their products liability action against Coleman through circumstantial evidence.*" (Emphasis added.) *Boyd*, 166 Ill. 2d at 200, 652 N.E.2d at 273.

The dissent disagreed, however, arguing that the plaintiffs' action against Coleman could not proceed without the heater. The dissent maintained:

> "The plaintiffs were injured when a space heater blew up. That evidence is now missing. Without examining and testing that space heater, there is no possibility whatever that the plaintiffs could sustain an action against its manufacturer because of an alleged defect. The heater may have been perfect in every way. It may have been an accident waiting to happen. No one will ever

know. It is gone. Gone with it is the plaintiffs' case against its manufacturer, the Coleman Company."[1]

*Boyd*, 166 Ill. 2d at 202, 652 N.E.2d at 274 (Heiple, J., dissenting, joined by Harrison, J.).

Nevertheless, the *Boyd* majority found it plausible that a plaintiff can succeed through circumstantial evidence in a strict liability action against a manufacturer even though the actual product involved cannot be located. *Boyd*, 166 Ill. 2d at 200, 652 N.E.2d at 273.

Similarly, a recent decision by this court provides support for plaintiff's position. In *Murphy v. General Motors Corp.*, 285 Ill. App. 3d 278, 284, 672 N.E.2d 371, 375 (1996) (Zwick, J., dissenting), the plaintiffs alleged that Palos Auto & Glass had negligently performed repairs on the driver's seat of a vehicle that later slid backward off its track and injured the plaintiffs. Following the accident, another repair shop disposed of the seat and its frame. The trial court struck the affidavit of plaintiffs' expert and granted summary judgment for Palos, finding that " '[w]ithout the seat frame this case is thrown into a speculative arena.' " *Murphy*, 285 Ill. App. 3d at 281, 672 N.E.2d at 373. On appeal, this court reversed. Although plaintiffs' expert did not inspect the actual seat involved in the incident, he reviewed the seat's design and specifications, as well as the depositions of mechanics at both repair shops. The record contained enough circumstantial evidence to support the expert's opinions that Palos' work caused the seat to collapse and that Palos should have replaced the seat instead of repairing it. These fact questions were for the jury, making summary judgment for Palos improper. *Murphy*, 285 Ill. App. 3d at 283, 672 N.E.2d at 374-75.

While *Murphy* did not involve a strict liability action as to Palos, this court specifically looked to product liability cases for guidance. "In such cases, 'the absence of the product at trial is not fatal to the plaintiff's cause.' " *Murphy*, 285 Ill. App. 3d at 282, 672 N.E.2d at 374, quoting *Samansky*, 208 Ill. App. 3d at 389, 567 N.E.2d at 394. Furthermore, "experts in product liability cases often rely on circumstantial evidence to form their opinions as to whether a product is defective." *Murphy*, 285 Ill. App. 3d at 282, 672 N.E.2d at 374. Indeed, "Illinois decisions have consistently held a plaintiff's proof sufficient to present a triable factual issue when the plaintiff has produced expert testimony that the defendant's product was defec-

---

[1]Incidentally, the record reveals that during the hearing on defendant's motion for summary judgment, Kucharik's attorney provided the Westlaw citation to *Boyd* and represented this exact language of the dissent as statements made by the majority. It is apparent that the trial court was misled by such argument. On appeal, neither party has cited to *Boyd*.

tive when it left the defendant's control and was a proximate cause of the plaintiff's injury." *Samansky*, 208 Ill. App. 3d at 391, 567 N.E.2d at 395.

Turning to the present case, we must determine whether, absent the helmet, plaintiff has introduced enough circumstantial evidence to support each of the elements of his strict liability action against Kucharik. We note that, unlike most of the cases defendant relies upon, this is not a case where the trial court excluded evidence of a defect or expert testimony as a sanction pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)). *E.g.*, *Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.*, 262 Ill. App. 3d 636, 634 N.E.2d 1319 (1994); *Graves v. Daley*, 172 Ill. App. 3d 35, 526 N.E.2d 679 (1988); *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 473 N.E.2d 444 (1984); *Stegmiller v. H.P.E., Inc.*, 81 Ill. App. 3d 1144, 401 N.E.2d 1156 (1980). Here, the court made no finding of bad faith on plaintiff's part; the court did not strike the deposition testimony and affidavits of plaintiff's expert; and the court did not exclude the literature defendant distributed or the exemplar helmet. All of this circumstantial evidence remained in the record. Thus, this case is more in line with those where, despite the absence of the product at issue, expert testimony and/or circumstantial evidence that a defect existed was found admissible. *E.g.*, *Murphy v. General Motors Corp.*, 285 Ill. App. 3d 278, 284, 672 N.E.2d 371, 375 (1996) (Zwick, J., dissenting); *H&H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill. App. 3d 235, 248, 632 N.E.2d 697, 705 (1994); *Samansky v. Rush-Presbyterian-St. Luke's Medical Center*, 208 Ill. App. 3d 377, 567 N.E.2d 386 (1990). Moreover, because the trial court here did not impose a sanction or bar evidence pursuant to Rule 219(c) (134 Ill. 2d R. 219(c)), the applicable standard of review is *not* whether the trial court abused its discretion, as defendant claims. Instead, our review is *de novo*, and we must construe the pleadings, admissions, affidavits, and depositions in the light most favorable to plaintiff.

■ Mindful of these considerations, we find that summary judgment in defendant's favor is inappropriate. Specifically, through the testimony of his expert and the circumstantial evidence upon which plaintiff relies, he has established sufficient evidence of a *prima facie* case in strict liability. We disagree with defendant's contention that "plaintiff's expert has no basis for his proximate cause opinions about the helmet." Although Tudor did not examine plaintiff's helmet, his opinions are supported by the record and tend to establish the three necessary elements of a product liability claim. First, Tudor opined that the helmet was unreasonably dangerous and not fit for its intended use. He also averred that the polyester-filled leather hair-

net helmet did not meet industry standards for protective headgear. Tudor reached these conclusions by studying the helmet's design and specifications, as well as by inspecting the exemplar helmet from the same line. Second, as the trial court noted, plaintiff offered evidence of the product's condition when it left defendant's control. Plaintiff did this by acquiring the exemplar helmet and by introducing the literature accompanying the helmet. According to plaintiff's expert, defendant's literature was in direct conflict with information and studies widely published in other literature throughout the industry. Specifically, Tudor took issue with the statements that promoted defendant's leather helmets as providing superior protection to hard shell plastic helmets. Tudor found such comparisons untrue, and at the very least, he interpreted these statements as proof that Kucharik was aware of an existing alternative design. Finally, plaintiff has introduced evidence tending to establish that his injuries proximately resulted from the helmet's defective design. Dr. Bartl and Dr. Feldstein stated that plaintiff had multiple head injuries above the ear and hairline as a result of his fall. Tudor testified that the helmet provided insufficient protection when being worn in a manner that defendant should have anticipated. In short, plaintiff has raised genuine issues of material fact that compel us to reverse the trial court's entry of summary judgment.

■ Defendant insists, however, that it is entitled to judgment as a matter of law because it will be unduly prejudiced in defending its case. Defendant urges that plaintiff lost the helmet and that he should bear the consequences of that through the loss of his lawsuit. We disagree. Again, we stress that this is not a sanctions case, and the record is extremely vague as to what actually happened to the helmet. In any event, at the summary judgment stage, where no sanctions have been imposed, there is no need for us to speculate as to the cause or blame for the helmet's loss. We are cognizant of the trial court's concern about defendant's ability to defend its case. Yet, at trial, defendant is free to cross-examine plaintiff extensively about the loss of the helmet. Defendant will have the opportunity to challenge Tudor about his opinions in the absence of the helmet. Defendant may introduce its own expert testimony that its helmet did not suffer from a design defect. Defendant may also request that the trial court give Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1992), to inform the jury about how it may consider a party's failure to produce evidence. *H&H Sand & Gravel Haulers*, 260 Ill. App. 3d at 247, 632 N.E.2d at 705. In full, that instruction states:

> "If a party to this case has failed to offer evidence within his power to produce, you may infer that the evidence would be

adverse to that party if you believe each of the following elements:

1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The evidence was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.

4. No reasonable excuse for the failure has been shown." Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1992).

■ Thus, as defendant will have ample opportunity to argue at trial about the consequences of the helmet's loss, we cannot justify taking this entire matter from the jury where genuine issues of material fact remain. In the record before us, plaintiff has maintained that he did not modify the helmet. Plaintiff's expert has stated that the entire line of Kucharik leather helmets was unreasonably dangerous. This testimony, when construed in the light most favorable to plaintiff, tends to negate the possibility of secondary causes. At this juncture, plaintiff has set forth a *prima facie* case that precludes summary judgment in defendant's favor. It is for the trier of fact to determine whether the helmet was defective when it left defendant's control. It is also a question for the jury as to whether that defect served as a proximate cause of plaintiff's injuries.

Accordingly, for the reasons set forth above, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

Reversed and remanded.

CERDA and BURKE, JJ., concur.